**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ——————————————— | : | |
| PAULA A. JANKOWSKI, | : | Case No. 3:19-CV-16424 (BRM) |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |
| ——————————————— | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Paula A. Jankowski's ("Jankowski") appeal from the final decision of the Commissioner of Social Security ("Commissioner"),[1] denying her application for Social Security Disability Benefits. Having reviewed the administrative record and the submissions filed in connection with the appeal pursuant to Local Civil Rule 9.1, and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, the Court **AFFIRMS** the decision of the ALJ.

I.     **BACKGROUND**

**A. Procedural History**

Jankowski filed an application for supplemental security income on October 22, 2015, alleging a disability that began January 5, 2012. (ALJ Hearing Decision, Tr. 12.) She later requested that the alleged onset date be amended to August 1, 2014. (Tr. 173.) Her claim was

---

[1] Upon the Appeals Council's Order denying Jankowski's request for a review of the decision of Administrative Law Judge Sharon Allard ("ALJ"), the ALJ's decision became the final decision of the Commissioner.

denied on February 16, 2016, because the medical evidence was not sufficient for the evaluation of the severity of her impairments before December 31, 2014, when her insurance coverage ran out. (Notice of Disapproved Claim, Tr. 93-97.) Jankowski filed a timely request for reconsideration on April 8, 2016. (Notice of Request for Reconsideration, Tr. 98.) Upon reconsideration, the claim was again denied on April 30, 2016. (Notice of Reconsideration, Tr. 99-101.) On May 20, 2016, Jankowski filed a written request for a hearing. (Request for Hearing, Tr. 102-03.) That hearing was held April 4, 2018, in Newark, New Jersey before the Hon. Sharon Allard. (Hr. Trans., Tr. 27-69.) Jankowski testified at that hearing. (*Id.*) Also testifying was Mary Vasishth, an impartial vocational expert. (*Id.*) On July 27, 2018, Administrative Law Judge Allard issued a decision concluding Jankowski "has not been under a disability within the meaning of the Social Security Act from January 5, 2012 through the date last insured." (Tr. 13.) As such, Jankowski was not entitled to disability insurance or SSDI benefits.

On October 1, 2018, Jankowski timely filed a Request for Review of the ALJ's decision to the Appeals Council. (Frankel Letter, Tr. 7-8.) On June 3, 2019, the Appeals Council denied Jankowski's Request for Review, thereby becoming the final agency decision. (Notice of Appeals Council Action, Tr. at 1-6.) Having exhausted her administrative remedies, Jankowski filed an appeal with this Court on August 7, 2019. (Compl. (ECF No. 1).) This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B. Factual Background**

Jankowski was 47 years old on the date of her application, qualifying her as a "younger person" pursuant to the Commissioner's Regulations. (Tr. 20 (citing 20 C.F.R. § 404.1563).) Jankowski has at least a high school education and prior work experience as a medical billing, administrative/billing clerk, medical code biller, and claim examiner. (Tr. 20.) She has not

engaged in substantial gainful activity since her original alleged onset date of January 5, 2012 through her date of last insured of December 31, 2014. (Tr. 14.) She lives with her 75-year-old parents and her 25-year-old nephew. (Hr. Trans., Tr. 37.)

Through the date last insured, Jankowski "had the following severe impairments: affective disorders, major depressive disorder, and generalized anxiety disorder." (Tr. 15.) Jankowski also had the following nonsevere impairments: "anemia, obesity, status post gastric bypass surgery and migraines." (Tr. 15.)

## II.   STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted).

3

Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

### III.    THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Social Security Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 42 U.S.C. §§ 423(d)(1)(A), 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a)(1). First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(b), 416.920(b); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c),

4

416.920(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1522(b)(1). A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see also Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *See* 20 C.F.R. § 404.1526(b)(3). An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *see also Bowen*, 482 U.S. at 141. Step four involves

5

three sub-steps: (1) the ALJ must make specific findings of fact as to the claimant's RFC; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the RFC to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679-80 (3d Cir. 2015) (quoting *Plummer*, 186 F.3d at 429). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, an administrative law judge must provide the reason for providing more or less weight to the evidence. *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The claimant is not disabled if his RFC allows him to perform his past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show [that] there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.* (citation omitted). Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2 (citing *Bowen*, 482 U.S. at 146-47 n.5). The Commissioner bears the proof burden for step five. *See id.* at 263.

## IV. DECISION

Jankowski appeals the ALJ's determination at step two that her nonpsychiatric impairments were nonsevere, an error Jankowski alleges means the ALJ also failed to include any nonpsychiatric limitations in the determination of her RFC at step four. (Pl.'s Br. in Supp. of App. (ECF No. 10) at 14 (citing POMS DI 24510.006).) Jankowski also finds error in the ALJ's failure to specifically consider her diagnosis of intestinal infections known as C.diff.[2] (*Id.*)

The Commissioner counters that the diagnosis of C.diff is not enough without "evidence of related functional loss." (ECF No. 14 at 10 (citing *Petition of Sullivan*, 90 F.2d 826, 845 (3d Cir. 1990); *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (stating that mere diagnosis in insufficient to show that a condition results in functional limitations) (further citations omitted)).) The Commissioner attributes the determination that Jankowski's nonpsychiatric impairments were nonsevere not to ALJ error but rather to Jankowski's failure to meet her burden in steps two and four to prove any disability. (Def.'s Br. in Opp. to App. (ECF No. 14) at 8-9.) To the extent the ALJ failed to consider a diagnosis of C.diff, the Commissioner argues the evidence shows that while Jankowski tested positive for C.diff in 2008, she had no symptoms or limitations related to this condition during the relevant period, meaning from the updated alleged onset in August 2014 through the date last insured of December 2014. (Def.'s Br. in Opp. to App. (ECF No. 14) at 11.)

---

[2] According to the Centers for Disease Control and Prevention, C.diff, or Clostridioides difficile, is a bacterium that causes diarrhea and colitis, which is an inflammation of the colon. *See* https://www.cdc.gov/cdiff/what-is.html (last checked August 19, 2020).

The Court first focuses its attention on step two, the point at which the ALJ listed Jankowski's severe and nonsevere impairments. Jankowski makes two separate but related arguments regarding step two. The Court will address them in turn.

### A.  Step Two: C.diff

Jankowski claims the ALJ erred by failing to consider her diagnosis of C.diff among her nonpsychiatric impairments. The Court agrees, but considers this error harmless.

The Regulations governing step two provide that "[i]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Social Security Administration] will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also id.* §§ 404.1522(a), 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities"). Basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

*Id.* §§ 404.1522(b)(1), 416.922(b)(1).

Jankowski has the burden of proving any impairments are "severe" at this step. *McCrea v. Comm'r*, 370 F.3d 357, 360 (3d Cir. 2004). However, she "need only demonstrate something beyond a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Id.* (citation omitted); *see Newell v.*

*Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) ("If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue."). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell*, 347 F.3d at 546. Therefore, "[i]f the evidence presented by [Jankowski] presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." *Id.* Reasonable doubts regarding severity should be resolved in favor of Jankowski. *Id.* at 547.

However, "[a]lthough the threshold in step two may be low, the standard of review remains the same." *Givens v. Comm'r of Soc. Sec.*, No. 13-5900, 2014 WL 3844810, at *4 (D.N.J. Aug. 4, 2014). The Commissioner's determinations at step two, like one made at any other step in the sequential analysis, "is to be upheld if supported by substantial evidence." *Id.* (quoting *McCrea*, 370 F.3d at 360). As such, even though a determination "at step two should be reviewed with close scrutiny, it still must be affirmed if supported by substantial evidence." *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). This Court cannot weigh the evidence or substitute its conclusions for those of the ALJ or Commissioner. *McCrea*, 370 F.3d at 361. Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360.

The ALJ did not list Jankowski's C.diff diagnosis as an impairment, either severe or nonsevere. Social Security Administration's Program Operations Manual System (POMS), the publicly available operating instructions for processing Social Security claims to which Jankowski relies on above, defines an alleged impairment is one "the claimant says he or she has

or is the description, in the claimant's own words, of the disabling condition." POMS TN 2 (06-

10).[3] POMS further defines a properly documented impairment as the product of

> sufficient case development, medical evaluation, and
> documentation procedures and for which the evidence shows: the
> probable duration of the impairment, the nature and limiting effects
> of the individual's physical and mental impairments, and the
> claimant's residual functional capacity to do work-related physical
> and mental activities in cases requiring consideration of vocational
> factors.

*Id.* Under the Regulations, a properly documented impairment must be analyzed in terms of its

impact on a claimant's functional abilities. *Suarez v. Astrue*, 996 F. Supp. 2d 327, 332 (E.D. Pa.

2013) (citing SSR 02–01p, SSR 00–3p). There is no such analysis regarding Jankowski's alleged

diagnosis of C.diff in the ALJ's decision. Jankowski contends this is error and that remand is

therefore required.

The Court agrees the ALJ erred in step two by failing to consider her diagnosis of C.diff.

However, remand is not necessary. The Court is guided in part by *Suarez*, where an ALJ's failure

to discuss the claimant's obesity was considered harmless error "because the evidence, including

medical records, application forms, and [claimant's] testimony, would not support a conclusion

that her obesity—individually or in combination with her other impairments—rendered her

unable to work." *Suarez*, 996 F. Supp. 2d at 332. In *Suarez*, the claimant's only mention of

obesity was an examination for snoring, while the claimant did not testify at her hearing about

any affect this obesity had on the ability to work. *Id.* The *Suarez* Court further observed the

---

[3] The Third Circuit recognizes POMS as "the authorized means for issuing official Social
Security policy and operating instructions." *Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 71 n.2
(3d Cir. 1996) (citing POMS § AO 20002.001). While POMS's "administrative interpretations
are not products of formal rulemaking, they nevertheless warrant respect." *Artz v. Barnhart*, 330
F.3d 170, 176 (3d Cir. 2003) (quoting *Washington State Dep't of Soc. & Health Servs. v.
Guardianship Estate of Keffeler*, 537 U.S. 371, 385–86, 123 S. Ct. 1017, 1026, 154 L. Ed. 2d
972 (2003) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–140, 65 S. Ct. 161, 89 L.Ed. 124
(1944)).

10

claimant on appeal did not point to any evidence in the record that would support claims that obesity resulted in functional limitations, "either in the medical record or in her own representations in the application forms or at the hearing." *Id.* at 333.

The factual posture of *Suarez* parallels this matter. In her brief, Jankowski cites only two references in the medical record to document her C.diff diagnosis. The first is contained in the records of her treating physician, Theodore Ende, D.O., who at an April 8, 2013 visit, diagnosed Jankowski with "intestinal infection due to clostridium difficile," though also noting that Jankowski "had a neg c-diff on last test." (Tr. 290.) The second relates to a March 11, 2013, visit, at which Jankowski reported abdominal pain, but on examination had a soft, nontender abdomen, with Ende again diagnosing "intestinal infection due to clostridium difficile." (Tr. 290.) Both examinations occurred outside the relevant period, which spans from the amended onset date of August 2014 to the December 2014 date of last insured.

Jankowski did have three office visits with Ende during the relevant period, one in November 2014 and two in December 2014. (Tr. 264-278.) Ende diagnosed "intestinal infection due to clostridium difficile" during Jankowski's November 2014 visit. (Tr. 278.) In the second December visit, the diagnosis was unchanged, though Jankowski denied "abdominal pain, nausea, . . . Change in stool consistence; Change in bowel habits. Losing control of bowels; Constipation; Diarrhea." (Tr. 266.) Ende did note in the first December 2014 visit that Jankowski's C.diff has been under the care of a gastroenterologist. (Tr. 274.) The medical record is devoid of treatment reports from a gastroenterologist.

At the hearing before the ALJ, Jankowski did not mention her C.diff diagnosis nor any limitations caused by her C.diff symptoms. In an opening statement lasting two pages of the hearing transcript, Jankowski's representative spent three-fourths of that time elucidating

11

Jankowski's severe mental impairments. (Tr. 34-35.) The little time given to physical impairments were consumed only with a discussion of Jankowski's migraines, chronic pain and arthritis. (Tr. 35.) Asked at the hearing about severe physical problems beyond the chronic pain/arthritis and migraines, Jankowski herself testified only about her "severe anemia." (Tr. 61.) At the end of the hearing, the ALJ asked Jankowski's about a closing statement, to which counsel responded that Jankowski relied on the opening statement.

In other words, like the claimant in *Suarez*, there is little in the medical record to which the ALJ could have referred in considering any functional limitations associated with Jankowski's C.diff diagnosis, and Jankowski provided no testimony indicating there were any functional limitations.

The Regulations are clear: claimants

> have to prove to [the Social Security Administration] that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled. . . . [The SSA] will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. § 404.1512. Jankowski provided the ALJ with a medical record that included a diagnosis of C.diff, but that medical record was otherwise silent on any limitations associated with this diagnosis. During the relevant period, there is no evidence Jankowski reported C.diff symptoms or was prescribed any C.diff medications. At the December 10, 2014, examination by Ende, Jankowski specifically denied experiencing diarrhea, constipation, nausea, abdominal pain, loss of bowel control or bloody stool. (Tr. 266.) The *Suarez* court affirmed the ALJ's decision citing a District of Delaware judge sitting in similar circumstances who stated, "the Court cannot remand the ALJ's decision based on the failure to confront evidence that does not

exist." *Suarez*, 996 F. Supp. 2d at 333 (quoting *Neff v. Astrue,* 875 F. Supp. 2d 411, 423 (D. Del. 2012)). The same result is required here.

### B. Step Two: Nonpsychiatric Conditions

Jankowski argues the ALJ further erred in step two by failing to recognize Jankowski's other nonpsychiatric conditions were severe, maintaining that step two's *de minimis* screening function described by *Newell* requires that finding an impairment to be severe needs only a determination that this impairment represent "a slight abnormality." (ECF No. 10 at 15 (citing *Newell*, 347 F.3d at 546 and quoting SSR 85-28).) Jankowski maintains the medical record evidences that her physical conditions are more than a slight abnormality. (*Id.*) Specifically, Jankowski contends the record is "replete with diagnosis and limitations due to Plaintiff's . . . severe and chronic migraines, intestinal infections, Anemia with Iron Deficiencies, low back pain, and chronic pain in her neck and shoulders." (*Id.*)

The Commissioner cites *Rutherford v. Barnhart* for the proposition that, even if the ALJ erred at step two by determining that Jankowski's nonmedical impairments were nonsevere, this error is harmless because the ALJ did find at least one severe impairment—Jankowski's "affective disorders, major depressive disorders, and generalized anxiety disorder." (ECF No. 14 at 11 (citing *Rutherford*, 399 F.3d 546, 553 (3d Cir. 2005); *see also* Tr. 15.) The Commissioner argues the step two determination is merely a threshold issue and as long as the ALJ found severe impairments, as the ALJ did here, the ALJ's analysis proceeds past step two and therefore any error is harmless. The Court agrees.

The Regulations require an ALJ to determine at step two the severity of any medical impairments and only a finding of no severe impairments ends the inquiry at step two into a claimant's claim. 20 C.F.R. § 404.1520(a)(4)(ii). A finding that any impairment is severe causes

the ALJ's claim analysis to continue on to step three, where impairments are analyzed to determine whether they meet the SSA's listings of recognized disabilities. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007) (stating that "Because the ALJ found in [claimant's] favor at Step Two, even if [the ALJ] had erroneously concluded that some of her other impairments were non-severe, any error was harmless."). Accordingly, the ALJ's determination that Jankowski's nonpsychiatric impairments were not severe is harmless error if only because the ALJ determined Jankowski's psychiatric impairments were severe.

However, even had the ALJ not determined the psychiatric impairments were severe, the Court still would affirm the ALJ's decision.

Jankowski relies on diagnoses of migraines, intestinal infections, anemia and skeletal pain to argue that these nonpsychiatric impairments, when combined, merit a finding of severe as defined by the Regulations. This was the only argument raised by Jankowski's counsel at the hearing regarding the nonpsychiatric impairments. (Tr. 35-36.)

The Regulations are clear that diagnoses are insufficient for establishing a severe impairment when not accompanied by evidence that these impairments "significantly limit[] your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The record does not support a determination that Jankowski's nonpsychiatric impairments, either individually or in concert, significantly limited her physical ability to do basic work activities during the relevant August-December 2014 period. As discussed above, in that period Jankowski was seen by her treating physician. At a December 2, 2014 visit, Jankowski denied sleep problems, fatigue, weakness, abdominal pain, limited joint mobility; muscle pain, neck pain, back pain, difficulty walking, trouble reaching above her head, and difficulty rising from a sitting position without assistance. (Tr. 273.) In short, Jankowski's musculoskeletal inspection was

14

normal aside from a closed fracture of a rib or ribs from a recent fall, and Ende noted she appeared "well developed" and "well nourished." (Tr. 274.)

In a follow-up exam on December 10, 2014, Jankowski again denied any sleep problems, fatigue, weakness, abdominal pain, limited joint mobility; muscle pain, neck pain, back pain, difficulty walking, trouble reaching above her head, and difficulty rising from a sitting position without assistance. (Tr. 266.) Ende again noted that Jankowski appeared "well developed" and "well nourished." (Tr. 267.)

The ALJ determined that because Jankowski's earnings record showed that she had acquired sufficient quarters of coverage to remain insured only through December 31, 2014, it was Jankowski's burden to establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. (Tr. 13; *see also* 42 U.S.C. §§ 416(i), 423(a)(1), (c)(1); 20 CFR §§ 404.101, 404.131.)

However, in addition to Jankowski's medical record for the relevant August–December 2014 period, the ALJ noted that during an October 2013 examination, Jankowski denied musculoskeletal defect such as joint pain and tenderness. (Tr. 15 (citing Tr. 282).) At this exam, the last in the record before the 2014 visits, Jankowski also denied limited joint mobility, joint pain, muscle pain, stiffness, tenderness, neck pain, back pain, difficulty walking, trouble reaching above her head, and difficulty rising from a sitting position without assistance. (Tr. 282.) The ALJ further determined that Jankowski's physical evaluations from February 2015 to June 2015 were similarly unremarkable. (Tr. 15 (citing Tr. 246, 251, 260.)) A look at the medical record, for example, shows that in the June 2015 visit, Ende again observed Jankowski to be "well developed" and "well nourished," with "normal bowel sounds," a "soft and nontender" abdomen, and a normal musculoskeletal inspection. (Tr. 248.) As a consequence of her review of

this medical record, the ALJ determined the chronic body pain claimed by Jankowski as justifying disability benefits was "not [a] medically determinable impairment due to a lack of objective evidence." (Tr. 15.) It is clear from a review of the medical record the ALJ's determinations about Jankowski's nonpsychiatric impairments is supported by substantial evidence as contemplated by *Biestock v. Berryhill*, where the Supreme Court concluded substantial evidence is "'more than a mere scintilla' and means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestock*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

Jankowski takes issue with the ALJ's dicta that the nonpsychiatric impairments were nonsevere in part because there was no aggressive treatment recommended or anticipated for these impairments. (ECF No. 10 at 16.) Jankowski contends the ALJ's failure to address what treatment was necessary for a nonsevere impairment to be considered severe invalidates the ALJ's determination because an ALJ "must set out a specific factual basis for each finding." (ECF No. 10 at 16 (quoting *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974).)

Jankowski's confidence in *Baerga* is misplaced, if only because the Court there stated:

> While the findings in this case could be improved upon, nevertheless, after careful consideration of the record and relating it to the examiner's findings, we conclude that such findings are sufficient to satisfy the substantial evidence test.

*Baerga*, 500 F.2d at 313 (citing *United States v. Crescent Amusement Co.*, 323 U.S. 173, 185, 65 S.Ct. 437, 89 L.Ed. 650 (1944)).

Jankowski then argues the ALJ's "aggressive treatment" comments evidence the ALJ's improper substitution of her medical opinion for the opinions of Jankowski's treating physicians. (ECF No. 10 at 16.) The Court is not persuaded the ALJ's examination of Jankowski's medical

record, meaning the history of her impairments, and noting the lack of an aggressive treatment plan, meaning how her physicians intended to treat her impairments in the future, constitutes the improper substitution of the ALJ's medical opinions for those of her treating physicians. Rather, the Court concludes the ALJ considered the medical evidence in the record from before, during and after the relevant August-December 2014 period in determining Jankowski's nonpsychiatric impairments were nonsevere because the evidence did not reveal any significant limits to her physical ability to do basic work activities. 20 C.F.R. § 404.1520(c).

The Court now turns to Jankowski's appeal of the ALJ's RFC determination.

### C. Step Four

Jankowski contends the ALJ "compounded" the alleged step two errors by failing to include significant physical limitations in step four's determination of Jankowski's RFC. Jankowski's argument is similarly unavailing.

An ALJ's finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" *Buckley v. Astrue*, No. 09-5058, 2010 WL 3035746 *9 (D.N.J. Aug. 3, 2010) (quoting *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981)).

Regarding Jankowski's RFC, the ALJ found:

> "After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she can understand and execute simple, routine tasks, and will be off task by 10% of the workday to the impairments.

(Tr. 17.) The ALJ stated this conclusion was based on having "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.*) The ALJ explained that, "because there are no severe physical impairments, the undersigned finds no exertional limitations." (Tr. 19.)

Jankowski argues the ALJ's determination that her nonpsychiatric conditions were nonsevere "is not supported by the evidence of record." (ECF No. 14 at 15.) Jankowski maintains the medical record "is replete with diagnosis and limitations" resulting from her nonpsychiatric impairments. (*Id.*)

Again, the record does not support Jankowski's argument. Consider Jankowski's testimony at her hearing. She testified she has regular pain in her shoulders, neck, lower back and right knee. (Tr. 58). She testified this pain ranks five on a one-to-ten scale, with medication. (Tr. 59.) She testified this pain is felt "oh, it's every day." (Tr. 59.) She testified to having undergone MRI and CAT scans showing arthritis in her spine. (Tr. 60.) Yet, asked if she had any documentation of her conditions prior to 2014, she admitted she did not. (Tr. 60.) And, in the medical examinations discussed above, Jankowski frequently denied joint or other muscoskeletal pain.

The other physical problem she identified at the 2018 hearing was anemia, which Jankowski testified had been treated by "a few transfusions and, infusions and transfusions." (Tr. 61.) However, she admitted it was "probably two years" since she had undergone any such treatments because she had instead been taking B12. (Tr. 61.) Asked how the anemia affected her, Jankowski testified to be "absolutely exhausted," however, she admitted she didn't know if this was because of her physical or her psychiatric impairments. (Tr. 61.)

The Regulations require an ALJ to give significant consideration to a claimant's subjective testimony of the inability to perform even light or sedentary work, but only when that testimony is supported by competent medical evidence. An ALJ may discount a claimant's subjective complaints if they are inconsistent with the evidence of record. 20 CFR § 404.1529(a); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). Therefore,

an ALJ is to consider a claimant's statements about the intensity, persistence, and limiting effects of symptoms, but will evaluate those statements "in relation to the objective medical evidence and other evidence," in reaching a conclusion as to whether a claimant is disabled. 20 CFR § 404.1529(c)(4).

In the matter before the bar, Jankowski didn't testify about any physical limitations associated with her nonpsychiatric impairments. She testified about feeling pain and exhaustion, but not about how those symptoms limited her physical ability to work. And, as the ALJ documented, the medical record for the relevant August-December 2014 period does not support conclusions about physical limitations. The ALJ stated:

> In October 2013, the claimant denied muscoskeletal defect such as joint pain and tenderness. In December 2014, Theodore Ende, M.D. observed that the claimant was well developed and in no acute distress. In addition, Dr. Ende reported normal muscoskeletal function. Moreover, despite the claimant's complaint of neck and shoulder pain, Dr. Ende noted that the claimant ambulated normally and displayed little evidence of tenderness throughout the body.

(Tr. 15.) This Court declines to re-weigh this evidence. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (holding, on appeal, a district court cannot re-weight the evidence but must affirm if the Commissioner's decision is supported by substantial evidence).

Jankowski bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). At step four, Jankowski must prove whether she retains the RFC to perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *see also Bowen*, 482 U.S. at 141. The ALJ determined "physical evaluations during, before and after the adjudicative period revealed overall normal findings and not acute distress." (Tr. 15.) In short, in considering Jankowski's subjective symptoms for the RFC determination, the ALJ's conclusion that Jankowski failed to carry her burden of showing that her nonpsychiatric

impairments would prevent her from working was supported by substantial evidence. It is clear the ALJ considered all evidence before her, weighed the credibility of the evidence, and appropriately explained in detail her reasoning for her conclusions. *See Plummer*, 186 F.3d at 429; *Cotter*, 642 F.2d at 705. As such, the ALJ's determination of Jankowski's RFC was supported by substantial evidence, and the ALJ's decision is therefore **AFFIRMED.**

## V.   CONCLUSION

For the reasons set forth above, the Court **AFFIRMS** the decision of the ALJ and the matter is closed.

**Date:** September 30, 2020                              */s/ Brian R. Martinotti*
                                                          **HON. BRIAN R. MARTINOTTI**
                                                          **UNITED STATES DISTRICT JUDGE**